**GASCONADE COUNTY COUNSELING SERVICES, INC., Respondent,**

v.

**MISSOURI DEPARTMENT OF Mental HEALTH, Appellant.**

**No. ED 93672.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 15, 2010.

Chris Koster, Attorney General, J. Scott Stacey, James R. Layton, Assistant Attorney General, Jefferson City, MO, for Appellant.

Lawrence J. Altman, Paul W. Lore, St. Louis, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Who may receive compensation under the Community Mental Health Services Act for providing mental health services to county residents is the issue presented in this appeal. The Missouri Department of Mental Health, Division of Comprehensive Psychiatric Services (the Department) appeals from the trial court's judgment declaring that for-profit corporations are not disqualified under Section 205.981, RSMo 2000[1] from being eligible to receive compensation from a Missouri county's community mental health fund for mental health services rendered to the county's residents. The Department contends that eligibility to receive compensation from the community mental health fund is limited to public facilities and not-for-profit entities, and argues that the trial court erroneously interpreted Section 205.981. Following a thorough review of the enabling legislation, we affirm the trial court's judgment.

---

1. All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

*Statutory Background*

Because Missouri's statutory scheme under the Community Mental Health Services Act significantly informs the facts of this case, we begin with a brief discussion of how the Missouri legislature has authorized Gasconade County, and other similarly situated counties, to raise and administer public funds for community mental health services. *See* Sections 205.975–205.990.

Upon approval by a majority of its qualified voters, Gasconade County may levy and collect taxes for the establishment and maintenance of community mental health services. Section 205.977. All monies collected pursuant to this tax must be deposited in a special fund called the "Community Mental Health Fund" (the Fund). Section 205.980. The Missouri legislature has enumerated three purposes for monies in the Fund:

(1) Providing necessary funds to establish, operate, and maintain community mental health centers, mental health clinics, or any comprehensive mental health services;

(2) Providing funds to supplement existing funds for the operation and maintenance of community mental health centers, mental health clinics, or any comprehensive mental health services;

(3) *Purchasing* any of the comprehensive mental health services from *community mental health centers, mental health clinics, and other public facilities or not-for-profit corporations* which are designated by the [D]epartment.

Section 205.977 (emphasis added). The Gasconade County Community Mental Health Fund Board of Trustees (the Board) is vested with the responsibility of administering the Fund. Section

205.975(1). As such, the Board may purchase comprehensive mental health services from certain entities. Sections 205.981.1, 205.975(1). Payment from the Board to the service-providing entity is "appropriated out of the county's community mental health fund." Section 205.981.2.

Though the Board enjoys discretion to enter such contracts, the Missouri legislature has proscribed limits with *whom* it may contract. Section 205.981.1 provides:

> The [B]oard ... may contract with a *community mental health center, mental health clinic, or other public facility or not-for-profit corporation as designated by the [D]epartment* for such comprehensive mental health services for the residents of such county as may be mutually agreeable between the ... *officials of such center, clinic, facility, or corporation and the [B]oard* ... of the county requesting the services for the residents thereof.

(emphasis added). The phrase "as designated by the [D]epartment" operates in conjunction with Section 205.987 to charge the Department with the development and promulgation of certain qualitative standards that a service-providing entity is expected to meet. Sections 205.981, 205.987. Chronologically speaking, this framework envisions that, before the Board may contract with an entity to provide mental health services, such an entity must be deemed eligible to be compensated from the Fund by first complying with the Department's standards and certification requirements and then by obtaining the Department's designation. *See* Sections 205.975–205.990.[2]

*Factual Background*

Gasconade County Counseling Services, Inc. (Corporation) is a *for-profit corpora-*

---

**2.** This designation requirement has been reiterated in an opinion letter issued by the Attorney General of the State of Missouri, dated April 28, 1981.

*tion* conducting business in Hermann, Gasconade County, Missouri. Corporation is in the business of providing mental health services to individuals.[3] The Department contends that Corporation is not eligible to contract with the Board and receive compensation from the Fund, and that it has never designated Corporation as eligible for Fund compensation.[4] However, the Department admits that in 2001 it certified Corporation's compliance with the qualitative standards established by the Department for mental health programs.

Presumably in reliance on a determination by the Department in 2001 that certain services Corporation provided were potentially eligible for Fund compensation, the Board entered a contractual relationship with Corporation. As a result, Corporation, under contract with the Board, has provided mental health services for qualified Gasconade County residents since 2001. The most recent contract between the Board and Corporation took effect January 1, 2008 and provided for two annual renewals in 2009 and 2010. In return for these mental health services, the Board agreed to pay Corporation up to $51,000 from the Fund. Since 2001, Corporation has been compensated from the Fund for the mental health services rendered to Gasconade County residents.

In April 2007, the Department and Corporation began to exchange correspondence regarding the eligibility of for-profit entities to receive compensation pursuant to mental health service contracts authorized under Section 205.981. On October 29, 2007, the Department sent a letter informing both the Board and Corporation that, although the Department had certified Corporation to provide mental health services to the public, the Department had not yet designated Corporation as eligible to receive compensation from the Fund. Furthermore, the Department explained its interpretation of Section 205.981, which permitted the Department to designate only public or not-for-profit entities as eligible to receive compensation from the Fund. Due to Corporation's for-profit status, the Department's interpretation of Section 205.981 necessarily precluded the Board's authority to contract with Corporation. In response, Corporation contended that the Department's interpretation was too narrow, and that Section 205.981 does not restrict eligibility for the Department's designation to only public or not-for-profit entities.

Unsure of whether its contract with Corporation was permissible under the legislature's statutory scheme, the Board ultimately advised Corporation in May of 2008 that it could not renew its current contract for the year 2009 until and unless Corporation obtained either the Department's designation or a court order finding it eligible to receive compensation from the Fund. In so advising Corporation of its action, the

---

**3.** These services included outpatient consultation for the prevention, diagnosis, and treatment of emotional disorders, mental disorders, alcoholism, and drug abuse.

**4.** It is worth noting that the record before us indicates that in 2001 Corporation requested that the Department designate its "[o]utpatient psychotherapy office and home based services ... as eligible for Mental Health Board funding." The record also indicates that, in response to this request, the Department made the following determination on

January 31, 2001: "[T]he Department hereby designates [such] services as eligible to apply for Mental Health Board funding." Our review of the record and the Department's reply brief reveals that the Department maintains that this 2001 determination did not equate to the "designation" envisioned by Section 205.981. Rather, the Department's position is that in 2001 it merely determined that certain mental health services that Corporation provides were "potentially eligible" for compensation from the Fund.

Board made clear that the decision not to renew its contract with Corporation was not related to the quality of the services provided. The Board's letter to Corporation opened with the following statement: "Please be assured that this non-renewal has nothing to do with the quality of care being provided by [Corporation]." In its letter, the Board informed Corporation that if it were to "seek 'designation,' the Board [was] willing to go on record and affirmatively state that [it was] pleased with the services [Corporation] provide[d]."

Thus, on May 16, 2008, Corporation wrote to the Department formally requesting designation. On June 30, 2008, the Department notified Corporation that it received the request but re-iterated its position that only public or not-for-profit entities were eligible for such designation. The Department added that it would not review Corporation's eligibility to receive compensation from the Fund until it received documentation of Corporation's non-profit status.

### Procedural Background

On July 21, 2008, Corporation filed a declaratory judgment petition against the Department, requesting the trial court to declare that Section 205.981 does not limit the entities eligible for the Department's designation to only public or not-for-profit entities. Corporation moved for summary judgment on January 2, 2009.

The trial court found that Section 205.981 listed four types of designation-eligible entities: (1) community mental health centers, (2) mental health clinics, (3) public facilities, or (4) not-for-profit corporations. In so finding, the trial court declared that, to the extent that the Department refuses to designate an entity for purposes of Section 205.981 merely because such an entity is not a public or not-for-profit entity, the Department's interpretation of Missouri law is incorrect. The trial court held that, even if an entity does not fall under Section 205.981's "public facility" or "not-for-profit corporation" classification, such an entity may still be designation-eligible if the entity may be properly categorized as a "community mental health center" or "mental health clinic" as provided under Section 205.981. The trial court additionally declared that any reading of Department regulation 9 CSR 30–2.010 contrary to the court's interpretation of Section 205.981 was invalid. For these reasons, Corporation's motion for summary judgment was sustained. This appeal follows.

### Points on Appeal

The Department raises two points on appeal. First, the Department claims that the trial court erred by wrongly interpreting Section 205.981. Second, the Department asserts that, because the trial court erroneously interpreted Section 205.981, the trial court further erred by invalidating 9 CSR 30–2.010 to the extent such regulation conflicted with its interpretation of Section 205.981.

### Standard of Review

Appellate review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.*

Statutory interpretation is an issue of law that appellate courts review *de novo*. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008); *In re G.F.*, 276 S.W.3d 327, 329 (Mo.App. E.D.2009) (holding that on issues

of statutory interpretation, we "reach our own conclusions . . . without deference to the trial court's conclusions").

Because the trial court sustained Corporation's summary judgment motion on accord of its interpretation of Section 205.981, our review in this case is *de novo*. *Conseco Fin. Servicing Corp. v. Mo. Dep't of Revenue*, 195 S.W.3d 410, 414 (Mo. banc 2006).

### Discussion

#### I. Point One—Interpretation of Section 205.981

In this case, the question presented to us inquires whether Section 205.981 disallows a for-profit corporation from eligibility for the Department's designation, thus foreclosing the Board's authority to use community mental health funds to purchase mental health services for its county's qualified residents from a for-profit entity, like Corporation.

We approach the task of statutory interpretation mindful that it is the function of the courts to construe and apply the law and not to make it. *Renner v. Dir. of Revenue*, 288 S.W.3d 763, 765 (Mo.App. E.D.2009). The goal of statutory interpretation is to ascertain the intent of the legislature, as expressed in the words of the statute. *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharmacy*, 208 S.W.3d 907, 909 (Mo. banc 2006). We achieve this goal by giving the language used its plain and ordinary meaning, *id.* at 910, and by applying any "statutory definitions" provided in the statute itself. *Gash v. Lafayette County*, 245 S.W.3d 229, 232 (Mo. banc 2008). Only when the legislative intent cannot be determined from the plain meaning of the statutory language may rules of construction be applied to resolve any ambiguity. *United Pharmacal Co.*, 208 S.W.3d at 910; *Hardt v. Vitae Found., Inc.*, 302 S.W.3d 133, 138 (Mo.

App. W.D.2009) (holding that "[w]here the language of a statute is clear and unambiguous, there is no room for construction"). The construction of statutes is not to be hyper-technical, but instead is to be reasonable and logical. *Donaldson v. Crawford*, 230 S.W.3d 340, 342 (Mo. banc 2007).

█ Pursuant to the principles of statutory interpretation referenced above, our analysis must concentrate on the language contained in Section 205.981. In pertinent part, the statute provides:

> The [B]oard . . . may contract with a *community mental health center, mental health clinic, or other public facility or not-for-profit corporation as designated by the [D]epartment* for such comprehensive mental health services for the residents of such county as may be mutually agreeable between the . . . *officials of such center, clinic, facility, or corporation and the [B]oard* . . . of the county requesting the services for the residents thereof.

Section 205.981.1 (emphasis added). Both "community mental health center" and "mental health clinic" are terms defined earlier in Chapter 205. The term "[c]ommunity mental health center" is defined as "a legal entity through which comprehensive mental health services are provided to individuals residing in a certain service area." Section 205.975(2). The term "[m]ental health clinic" is defined as "a health entity offering community services delivered from a fixed place or from various places within a service area on an outpatient and consultative basis for the prevention, diagnosis, and treatment of emotional or mental disorders, alcoholism, or drug abuse." Section 205.975(6).

The Department claims that it may not designate Corporation as eligible to receive community mental health funds because Section 205.981.1 permits it to desig-

nate only public facilities or not-for-profit corporations, and Corporation fits neither of those categories. In arriving at this position, the Department reads the phrase *"or other public facility or not-for-profit corporation"* in Section 205.981.1 to restrictively modify the characteristics that community mental health centers and mental health clinics must possess before they are designation-eligible. That is, the Department maintains that (1) a community mental health center must be properly categorized as either a public facility or not-for-profit corporation in order to be designation-eligible, and (2) a mental health clinic must be properly categorized as either a public facility or not-for-profit corporation in order to be designation-eligible. To support this interpretation, the Department relies on the case of *Norberg v. Montgomery,* 351 Mo. 180, 173 S.W.2d 387 (1943) and the fact that the evolution of Section 205.981's language since 1969 neglects to include the phrase "for-profit." We discuss these two items in turn.

First, the Department argues that the Missouri Supreme Court's statutory analysis in *Norberg* instructs us to acquiesce to the Department's reading of Section 205.981. While we acknowledge that the statutory provision at issue in *Norberg* bears a structural similarity to Section 205.981, *Norberg's* actual holding sheds little light on the precise question before us here. In *Norberg,* the Court was faced with deciding who, among two persons, was entitled to Jackson County's statutory title of "accounting officer" under the county budget law. 173 S.W.2d at 388.

Both the county accountant and the county clerk claimed that a certain statutory provision rightfully vested the title in them. *Id.* at 388–89. The provision at issue read: "Whenever in this act the term of 'accounting officer' shall appear, it shall be deemed to mean the county clerk, county controller, county auditor, accountant or other officer or employee *keeping the principal records of the county." Id.* at 388–89 (emphasis added). The Court held that the phrase "keeping the principal records of the county" modified each preceding noun in the list such that it "applie[d] to the first noun 'county clerk' as well as to the last noun 'employee.' " [5] *Id.* at 391. Thus, because only the county clerk of Jackson County was responsible for keeping the county's principal records and the county accountant was responsible for other matters, *Norberg* concluded that the county clerk fell within the statutory definition of "accounting officer." *Id.* at 391. We are not persuaded that *Norberg's* interpretation of the phrase "keeping the principal records of the county" necessarily instructs us to read Section 205.981's words "or other public facility or not-for-profit corporation" as a restrictive clause modifying the terms "community mental health center" or "mental health clinic." At best, analogical reasoning permits us to use *Norberg's* analysis of "keeping the principal records of the county" to aid in our interpretation of the subsequent Section 205.981 phrase, "as designated by the [D]epartment." Tracking *Norberg's* inclination to set aside the last antecedent rule,

---

5. *Norberg's* holding illustrates a scenario in which the Missouri Supreme Court decided not to utilize the last antecedent rule of statutory construction. 173 S.W.2d at 390–91. By what is known as the last antecedent rule, a "limit[ing] or restrictive clause contained in [a] statute is generally construed to refer to and limit and restrict an immediately preceding clause or antecedent." 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:26 (7th ed.). However, "[t]he rule is an aid to construction and will not be utilized where the extension to the more remote antecedent is required." *Id.* (explaining that "if something in the subject matter or dominant purpose of the statute requires a different interpretation, the modifying clause is not confined to the last antecedent").

we read the phrase "as designated by the [D]epartment" to modify *each* noun in the preceding list, thereby requiring community mental health centers, mental health clinics, public facilities, and not-for-profit corporations to be designated by the Department before they may contract with the Board. However, we do not find in *Norberg* a clear direction to this Court to accept the Department's limiting interpretation of the phrase "or other public facility or not-for-profit corporation" as it relates to the terms "community mental health centers" and "mental health clinics."

Second, the Department relies on Section 205.981's legislative history to argue that for-profit entities are precluded from eligibility for the Department's designation. The Department's reliance is misplaced. As the Department correctly notes, Sections 205.975 through 205.990 derive from a Senate bill enacted in 1969. In that bill, the analogue to what is now Section 205.981 stated that "[n]othing in this act shall preclude a board of trustees from contracting with an existing not-for-profit organization to provide [mental health] services for the residents of the county or of the area to be served." 1969 Mo. Laws 334. Nine years later in 1978, this portion of the Missouri Code underwent significant statutory changes, and the legislature repealed most of the language from the 1969 law. Most notably, the 1978 law created definitional provisions for the terms "[c]ommunity mental health center"

and "[m]ental health clinic," and permitted counties to "contract with a community mental health center, mental health clinic, or other public facility or not-for-profit corporation as designated by the [D]epartment. . . ." 1978 Mo. Laws 537–39.[6] We find that these revisions illustrate both the legislature's expansion of the list of those entities with whom the Board was authorized to contract and the legislature's intention to further define the scope of two of the entities included on that list. The Department argues that the legislature could have expressly added the term "for-profit corporations" to its expanded list of entities with whom the Board is authorized to contract, but by choosing not to do so, it necessarily precluded for-profit corporations from eligibility for compensation from the Fund. Though we acknowledge the sound logic of the Department's premise, as it echoes the familiar rule of statutory construction termed *expressio unius est exclusio alterius*,[7] we nevertheless must reject the Department's argument. We utilize rules of statutory construction to assist us in our task of ascertaining legislative intent only when an ambiguity arises from the words themselves. *Grubbs v. Treasurer of Mo. as Custodian of the Second Injury Fund*, 298 S.W.3d 907, 911 (Mo.App. E.D.2009). Because we find the meaning of Section 205.981 to be plain and clear to a person of ordinary intelligence, *see Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988) (defining

---

**6.** Significant portions of the statutory language crafted pursuant to the 1978 revision—including the statutory definitions of "[c]ommunity mental health center" and "[m]ental health clinic" and the provision authorizing the Board to contract with certain entities—have remained virtually unchanged in the current version of Missouri Code sections 205.975 through 205.990.

**7.** The maxim of *expressio unius est exclusio alterius* creates "an inference that all omis-

sions [in an individual statute] should be understood as exclusions." 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:26 (7th ed.); *see Kansas City v. J.I. Case Threshing Mach. Co.*, 337 Mo. 913, 87 S.W.2d 195, 205 (1935) (holding that *expressio unius est exclusio alterius* is a general rule of statutory construction which acknowledges that "the mention of one thing implies the exclusion of another thing").

ambiguity), we need not resort to the maxim of *expressio unius est exclusio alterius* or to any other any rule of construction; rather, we must give effect to the statute's words as they are written. *City of Bridgeton v. Titlemax of Mo., Inc.*, 292 S.W.3d 530, 536 (Mo.App. E.D.2009).

We again emphasize that our function is to construe and apply the law, not make it. *Renner*, 288 S.W.3d at 765. The plain and ordinary meaning of the words chosen by the legislature drives our statutory analysis. *State v. McLaughlin*, 265 S.W.3d 257, 267 (Mo. banc 2008) (holding that "[i]n the absence of [a] guiding case or other authority, the language of the statute itself provides the best guide"). When examining the phrase, "[t]he [B]oard ... may contract with a community mental health center, mental health clinic, or other public facility or not-for-profit corporation," we find that a plain reading of these words reveals that the legislature created a list comprised of four separate entities, each of whom are alternatively eligible for the Department's designation to receive compensation from the Fund for services rendered. Though the Department contends that the words "or other" signify the beginning of a clause that restrictively modifies the characteristics that a community mental health center or mental health clinic may possess, our interpretation better incorporates the plain meaning of the word "or." That is, the word "or" is typically used as a function word to indicate a choice between alternative things, states, or courses. Webster's Third International Dictionary 1585 (1981); *see Council Plaza Redevelopment Corp. v. Duffey*, 439 S.W.2d 526, 532 (Mo. banc 1969) (acknowledging that "or" is typically disjunctive); *see Norberg*, 173 S.W.2d at 390 ("The word 'or' is ordinarily used as a disjunctive to mean 'either' as 'either this or that.' "); *see State v. Graham*, 149 S.W.3d 465, 467 (Mo. App. E.D.2004) ("The disjunctive 'or' in its

ordinary sense marks an alternative generally corresponding to the term 'either.' "). This conventional meaning of the word "or" rings in harmony with our interpretation that its place in Section 205.981 denotes alternative items in a list rather than a limiting phrase.

Even more critical to our analysis is the legislature's careful decision to define the terms it used in Section 205.981—"community mental health center" and "mental health clinic"—in Section 205.975's definitional provision. Our interpretation gives appropriate regard to the legislature's inclusion of these precise definitions. *State v. Seuferling*, 238 S.W.3d 217, 220 (Mo. App. W.D.2007) ("The statutory definition should be followed in the interpretation of the statute to which it relates and ... is binding on the courts."). Section 205.975 defines "[c]ommunity mental health center" as "a *legal entity* through which comprehensive mental health services are provided to individuals residing in a certain service area." Section 205.975(2) (emphasis added). Section 205.975 defines "[m]ental health clinic" as "a *health entity* offering community services delivered from a fixed place or from various places within a service area on an outpatient and consultative basis for the prevention, diagnosis, and treatment of emotional or mental disorders, alcoholism, or drug abuse." Section 205.975(6) (emphasis added). Neither of these definitions espouses a legislative directive that such centers and clinics necessarily fall under the umbrella classification of either a public facility or not-for-profit corporation. To constrict these definitions further than the language set forth in Section 205.975 would require us to add language to the legislature's carefully crafted definitions. This we cannot and will not do.

We read Section 205.981 to list four separate entities, each of whom are alter-

natively eligible for the Department's designation to receive compensation for the Fund. Accordingly, the failure of an entity to fall within the classification of either a public facility or not-for-profit corporation is not fatal to that entity's eligibility to contract with the Board to provide mental health services and receive corresponding compensation from the Fund. So long as an entity may be appropriately classified as one of those four separate entities, said entity is eligible for the Department's designation. For-profit corporations are not per se disqualified. Point one is denied.

## II. Point Two—9 CSR 30–2.010

■ As previously mentioned, Section 205.987 charges the Department with the development and promulgation of certain technical and qualitative standards that an entity must satisfy before said entity will be designated by the Department to receive county funds as compensation for mental health services provided to county residents pursuant to Board authorized contracts. Specifically, Section 205.987 provides that "the [D]epartment shall develop and promulgate *standards of construction, staffing, operations, and services* which any public or private entity providing any comprehensive mental health services shall meet before funds collected pursuant to [the Community Mental Health Services Act] may be disbursed." Section 205.987 (emphasis added). In furtherance of this charge, Department regulation 9 CSR 30–2.010 addresses these so-called designation pre-requisites. For example,

this regulation requires that, before an entity is eligible to be designated to receive county funds, said entity must submit proof that, *inter alia*, it has fiscal management policies in accordance with generally accepted accounting principles [8]; that its personnel meet any local, state or federal requirements for their profession [9]; that it has written policies detailing how medications are prescribed, obtained, stored, dispensed, and administered [10]; and that it has been certified by the Department to provide comprehensive mental health care services under the applicable program certification standards.[11]

The Department argues that 9 CSR 30–2.010 also provides a threshold limitation on which types of entities are eligible to be compensated from the Fund. Specifically, the Department maintains that 9 CSR 30–2.010 has long limited designation-eligibility to only public facilities or not-for-profit corporations.[12]

■ "The well established rule is that [a] regulation [ ] may be promulgated only to the extent of and within the delegated authority of the statute involved." *Parmley v. Mo. Dental Bd.*, 719 S.W.2d 745, 755 (Mo. banc 1986); *Termini v. Mo. Gaming Comm'n*, 921 S.W.2d 159, 161 (Mo.App. W.D.1996) ("An administrative agency enjoys no more authority that that granted by statute."). Because Section 205.981 plainly articulates with whom the Board may contract and because the Department's rule-making authority is limited by

---

8. CSR 30–2.010(4)(E).

9. CSR 30–2–010(4)(H).

10. 9 CSR 30–2.010(4)(*O*).

11. 9 CSR 30–2.010(5).

12. In its initial brief, the Department acknowledged that "regulation 9 CSR 30–2.010

was memorialized pursuant to the Department's interpretation of [Section] 205.981.1." It interpreted Section 205.981.1 to provide that "only public facilities or not-for-profit corporations can be designated by the Department to be eligible for county mental health funds."

Section 205.987's charge to merely "develop and promulgate *standards of construction, staffing, operations, and services* which any [service-providing entity] shall meet before [county funds] may be disbursed," the language of 9 CSR 30–2.010 does not control our analysis of an entity's eligibility to receive compensation under Section 205.981 of the Community Mental Health Services Act.

In addition, "[w]hen there is a direct conflict or inconsistency between a statute and a regulation, the statute which represents the true legislative intent must necessarily prevail." *Parmley,* 719 S.W.2d at 755; *Dep't of Labor and Indus. Relations, Div. of Labor Standards v. Bd. of Pub. Utilities,* 910 S.W.2d 737, 741 (Mo. App. S.D.1995). Thus, to any extent that 9 CSR 30–2.010 contradicts this Court's interpretation of Section 205.981 by introducing an entity's for-profit status as a condition of eligibility for compensation from the Fund, it is a nullity. Point two is denied.

### Conclusion

Based on the foregoing, we affirm the trial court's judgment that for-profit corporations are not disqualified because of their for-profit status under Section 205.981 from eligibility to receive the Department's designation and to receive compensation from a Missouri county's community mental health fund.

GEORGE W. DRAPER, III and GARY M. GAERTNER, JR., JJ., Concur.