

# In the
# Missouri Court of Appeals
# Western District

ST LOUIS-JEFFERSON SOLID
WASTE MANAGEMENT DISTRICT,

          Respondent,

v.

DEPARTMENT OF NATURAL
RESOURCES, STATE OF
MISSOURI,

          Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**WD85984**

**OPINION FILED:**
**October 24, 2023**

**Appeal from the Circuit Court of Cole County, Missouri**
The Honorable Daniel Green, Judge

Before Division Four: Gary D. Witt, Chief Judge, Presiding, W. Douglas Thomson, Judge, and, Andrea Ravens Vandeloecht, Special Judge

The Missouri Department of Natural Resources ("Department") appeals a judgment from the Circuit Court of Cole County, Missouri ("trial court") granting summary judgment in favor of St. Louis-Jefferson Solid Waste Management District ("District") on its claim for declaratory judgment and injunctive relief. The Department raises two points on appeal and argues that: (1) the trial court erred in finding section 260.335.2(2) no longer requires a Financial Assistance Agreement in order for districts to receive funds because the

Department retains oversight and authority under other related provisions; and (2) the trial court erred in invalidating 10 CSR 80-9.050 because it does not conflict with section 260.335.2(2) since the Department has authority to oversee funds allocated to the District. We affirm the judgment of the trial court. The case is remanded to the trial court to determine the District's reasonable attorneys' fees on appeal.

## Factual and Procedural Background

The District is a solid waste management district, created and existing pursuant to section 260.305.[1] The Department is a state agency that administers programs and policies relating to environmental control and the conservation and management of natural resources. Section 640.010. One of the programs the Department administers is the Solid Waste Management Fund ("Fund"). Section 260.330. Every operator of a solid waste landfill is required by statute to charge a fee per ton of solid waste that it accepts into its landfill. Section 260.330.1. After being credited with the costs the landfill expends to collect and disperse the fee, the remainder is paid to the state and is placed into the Fund. *Id.* Money in the Fund is then dispersed by the Department pursuant to statute. Section 260.335. Portions of the Fund are distributed by the Department to solid waste management districts ("districts") across the state. *Id.*

The amount of money districts receive from the Fund is controlled by section 260.335. Prior to 2015, pursuant to the statute, the Department distributed sixty-one

---

[1] All statutory references are to Revised Statutes of Missouri (2016) as currently updated, unless otherwise indicated.

percent of the Fund to cities, counties, and districts through grants. Section 260.335.2(2)(2014). At that time, the Department's regulations required districts to enter into Financial Assistance Agreements ("FAA") as a prerequisite to receiving grant funds from the Fund. 10 CSR 80-9.050(3)(B). A FAA is the Department's equivalent to a grant agreement and it placed significant restrictions on the use of, and reporting requirements regarding the grant funds received from the Fund. When submitting a FAA, a district was agreeing to administer the grants funds it received from the Fund in accordance with federal and state law, and the Department's policies and procedures, and to submit reports to the Department as to how the grant was expended. 10 CSR 80-9.050(3)(B). A district's failure to submit and comply with the FAA's requirements would result in the Department withholding that district's portion of grant funding until compliance was established.

In 2015, the legislature amended section 260.335 in the passage of Senate Bill 445 (2015). Prior to Senate Bill 445 ("amendment"), the statute read "[s]ixty-one percent of the revenues [from the Fund] . . . shall be allocated through grants, upon appropriation, to participating cities, counties, and districts." Section 260.335.2(2)(2014). The statute was amended in relevant part and now provides "sixty-one percent of the revenues [from the Fund] . . . shall be allocated to solid waste management districts." Section 260.335.2(2). It further provided that from the allocations a district receives from the Fund, the district is to provide grants to counties, cities, and other entities involved in solid waste management, such as recycling, that are located within that district.

On May 31, 2017, the District contacted the Department, requesting it to directly distribute the District's allocation from the Fund pursuant to the District's interpretation of section

3

260.335's amendments. The Department did not change its pre-amendment implementation procedure of allocating funds under section 260.335.2 and continued to require districts to submit a FAA as a precondition to any allocation from the Fund. The District applied for its 2019 allocation without submitting a FAA to the Department. The Department notified the District that an executed FAA was required for the District to receive its allocation. At the end of 2018, the District pushed back on the Department's interpretation of section 260.335 and its precondition requirement of an executed FAA. The Department informed the District that it believed the law still permitted the Department to require a FAA prior to distributing allocations to a district under section 260.335.2. Subsequently the District submitted a FAA to receive its 2019 allocation.

On June 1, 2021, the District filed a petition for declaratory judgment and injunctive relief, raising two counts. First, the District asserted section 260.335.2's amendment deprived the Department of authority to require Districts to submit a FAA and agree to the Department's "General Terms and Conditions" prior to allocation of money from the Fund. Second, the District asserted 10 CSR 80-9.050 is void due to section 260.335.2's amendment because the Department cannot set preconditions on funding that districts are statutorily entitled to directly receive. Both parties filed cross-motions for summary judgment. On December 12, 2022, the trial court granted the District's motion for summary

4

judgment and denied the Department's motion for summary judgment.[2]  This appeal follows.

## Standard of Review

Our review of a summary judgment is *de novo*.  *LaBranche v. Kansas City Pub. Schs.*, 671 S.W.3d 801, 807 (Mo. App. W.D. 2023).  This Court "will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law."  *Truman Medical Ctr., Inc. v. Am. Standard Ins. Co.*, 508 S.W.3d 122,124 (Mo. App. W.D. 2017).  Here, the trial court's grant of the District's motion for summary judgment was based on its interpretation of section 260.335.2(2).  Questions of statutory interpretation are also reviewed *de novo*.  *Dickemann v. Costco Wholesale Corp.*, 550 S.W.3d 65, 67 (Mo. banc 2018).

## Analysis

As an initial matter, the District asserts the Department's Brief has several Rule 84.04[3] deficiencies which should warrant this Court to summarily deny both Points I and II.  Rule 84.04 sets forth mandatory requirements for appellate briefs and failure to substantially comply is grounds for dismissal.  *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505, 510 (Mo. banc 2022).  Our Courts prefer to reach the merits of a case, excusing technical deficiencies in a brief, but we "will not consider a brief so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal."  *Id.* at 505.

---

[2] The trial court noted the Department's "Cross-Motion for Summary Judgment" and other filings violated Rule 74.04, and the Department failed to respond to the District's Statement of Uncontroverted Material Facts, resulting in the Department's admission of all facts asserted by the District.

[3] All rule references are to the Missouri Supreme Court Rules (2023) unless otherwise noted.

Since the Department's Brief substantially complies with Rule 84.04 and we can understand the arguments they are raising we exercise our discretion and review this case on its merits.

### Interpretation of Section 260.335.2(2)

The Department's first point on appeal is that the trial court erred in concluding section 260.335.2(2) following the 2015 amendments, no longer provides the Department authority to require districts to submit and comply with FAAs in order to receive money from the Fund.

The primary rule of statutory interpretation is to ascertain the legislature's intent by looking at the plain and ordinary meaning of the statutory language. *Moore v. Bi-State Dev. Agency*, 609 S.W.3d 693, 697 (Mo. banc 2020). "When the words are clear, there is nothing to construe beyond applying the plain meaning of the law." *Id.* (internal citation omitted). If the statute's plain language does not answer the current dispute as to the statute's meaning, then it is ambiguous. *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009). When there is an unambiguous statute, a court should consider whether the language of the statute leads to "absurd or illogical results." *City of Univ. City v. AT&T Wireless Servs.*, 371 S.W.3d 14, 20 (Mo. App. E.D. 2012). A statute's language, "leads to absurd or illogical results when there is a complete contradiction in the language or when two statutory provisions cannot be harmonized." *Id.* (internal quotation omitted). Only when the statute's language is ambiguous or would lead to an absurd or illogical result, do we then look beyond the plain meaning and to the rules of statutory

6

construction. *Perkins v. Bridgeton Police Dept.*, 549 S.W.3d 504, 506 (Mo. App. W.D. 2018).

Section 260.335.2(2) following the 2015 amendment provides, in relevant part:

> Sixty-one percent of the revenues . . . shall be allocated to solid waste management districts. Revenues to be allocated under this subdivision shall be divided as follows: forty percent shall be allocated based on the population of each district in the latest decennial census, and sixty percent shall be allocated based on the amount of revenue generated within each district . . . No more than fifty percent of the revenue allocable under this subdivision may be allocated to the districts upon approval of the department for implementation of a solid waste management plan and district operations, and at least fifty percent of the revenue allocable to the districts under this subdivision shall be allocated to the cities and counties of the district or to persons or entities providing solid waste management, waste reduction, recycling and related services in these cities and counties . . . Each district receiving moneys under this subdivision shall expend such moneys pursuant to a solid waste management plan required under section 260.325, and only in the case that the district is in compliance with planning requirements established by the department. Moneys shall be awarded based upon grant applications. The following criteria may be considered to establish the order of district grant priority. . . [.]

Before the 2015 amendment, section 260.335.2(2) provided "[s]ixty-one percent of revenues . . . shall be allocated *through grants, upon appropriation, to participating cities, counties, and districts*." (emphasis added). The Department argues it is permitted to require districts to submit FAAs prior to receiving money from the Fund because the amendment of section 260.335.2(2) shows no expression of the legislature's intent to curtail this authority. While the language stating that the funds were to be distributed "through grants, upon appropriation to participating cities, counties" was removed from the statute, the Department argues this is merely legislative clean-up. According to the Department, the legislature would have explicitly stated if it intended to exempt section 260.335.2 funding

7

from the Department's traditional roles under section 260.225. The Department argues that if this Court construes the deletion of the phrase in section 260.335 as revoking its authority to require districts to submit FAAs we would be violating the stabilizing canon against implied repeals. We disagree with the Department's interpretation and reasoning.

"[W]hen the legislature amends a statute, we presume the legislature intended to change the existing law." *State ex rel. T.J. v. Cundiff*, 632 S.W.3d 353, 357 (Mo. banc 2021). Here, the legislature intended to change the law when it amended section 260.335.2(2) by removing the "through grants" language and providing that the money "shall be allocated to [districts]." The Department points to different portions of section 260.335.2(2) to support its argument that the legislature did not intend to remove the Department's oversight authority when it amended the statute. Another portion of section 260.335.2(2) provides "[n]o more than fifty percent of the revenue allocable under this subdivision may be allocated to the districts upon approval of the department for implementation of a solid waste management plan and district operations [.]" The Department argues this portion illustrates the legislature's intent to prohibit the Department from blindly providing money to districts that are not in compliance with its planning requirements, thereby giving the Department authority to oversee the distribution of sixty-one percent of revenues allocable to districts from the Fund through the use of FAAs. We disagree.

This provision of section 260.335.2(2) provides that no more than fifty percent of the revenue a district receives under this section can be allocated to districts for district operations and the implementation of a solid waste management plan that was approved

8

by the Department. Section 260.325 governs the procedures and requirements for solid waste management plans. Under section 260.325, each district must submit to the Department a solid waste management plan and the Department has the authority to approve or deny the plan. Each district's executive board has the responsibility to review the district's plan at least every twenty-four months to evaluate the district's progress in meeting the requirements and goals of the plan, and submit plan revisions to the Department. Further, the district's executive board must have an independent financial statement audit of the records and accounts of its operations. Depending on the amount of money Districts receive from section 260.335, districts may be required to have independent financial statement audits annually or biennially. Other districts, however, are monitored biennially by the Department. At least once every five years, or as deemed necessary by the Department, the Department must conduct a performance audit of grants to each district. The Department has the authority to institute a civil action under section 260.240 to compel a district's submission of its plan. Thus, while the Department has some oversight over districts' solid waste management plans the Department cannot extend this authority to require districts to submit a FAA prior to receiving the money authorized by section 260.335.2 from the Fund.

After the amendment, the only statutorily provided oversight authority the Department has over funds districts receive under section 260.335.2(2), is for the *other* fifty percent of the allocation from which the districts provide grants to "cities and counties of the district or to persons or entities providing solid waste management, waste reduction, recycling and related services in these cities and counties" (collectively "underlying

9

entities"). Sections 260.335.2(2) and 260.335.5 govern district grants to underlying entities. Section 260.335.2(2) includes criteria districts can use to establish the order of district grant priority. Once the grants to underlying entities are approved by the district, the district must submit forms to the Department to verify public notice procedures were followed, grant proposals were reviewed and ranked, and only eligible costs are funded. Section 260.335.5. Within thirty days, the Department must review the grant application and notify the district of any additional information it needs. *Id.* Under this language while each district has the authority to initially approve grants to other entities, the Department has continued oversight over their implementation. Under section 260.335.5 the Department must review the performance of all grant recipients to ensure the money is effectively being expended to further the purposes of the grant as described in the grant application. Each grant application must contain specific goals and implementation dates, and recipients are contractually obligated to satisfy these terms. *Id.* Additionally, the Department can require grant recipients to submit periodic reports and the Department may audit the records of recipients to ensure compliance. *Id.* Further, the Department may withhold subsequent grant payments and may compel the repayment of funds provided to recipients that fail to maintain or submit reports, refuse the Department access to the records, or fail to meet the Department's performance standards. *Id.* The Department's explicit authority over the recipients of district grants, under section 260.335.5, cannot be expanded to allow the Department to condition receipt of district funds, under section 260.335.2(2), through FAAs because the legislature specifically removed this authority with the 2015 amendment. Based on the restrictions and oversight provisions that the

10

legislature placed on the recipients of grants provided from the District it is clear the legislature knows how to restrict funds and provide oversight in this manner, but chose not to place these types of restrictions and oversight over the funds allocated to District under 260.335.2(2).

The language of section 260.335.2(2) is clear and unambiguous. The Department can no longer condition funding under this subsection through FAAs and the revenues must be distributed directly to the districts. Section 260.335.2(2) ("Sixty-one percent of the revenues . . .shall be allocated to solid waste management districts."); *see State ex rel. Universal Credit Acceptance, Inc. v. Reno*, 601 S.W.3d 546, 548 (Mo. banc 2020) ("Generally, the word 'shall' connotes a mandatory duty.") (internal citation omitted). Since the statute is unambiguous, we do not look beyond its plain meaning.

The Department, however, urges this Court to apply the rules of statutory construction because the trial court's interpretation of section 260.335.2(2) results in an absurd and illogical result for two reasons. First, the Department argues the trial court's interpretation requires the Department to provide funds to districts without any oversight of the funds, which is in direct conflict with the Department's duties under section 260.225.1(8). Second, the Department asserts the trial court's conclusion that the Department can no longer precondition funding on grants, like FAAs, violates the statutorily mandated contractual relationship between the Department and districts under 260.225.1(11). We disagree.

Section 260.225.1(8) provides in relevant part, "the department shall: . . . [s]ubject to appropriation by the general assembly, establish criteria for awarding state-funded solid

11

waste management grants to cities, counties, and districts, allocate funds, and monitor the proper expenditure of funds [.]" Consistent with section 260.225.1(8), section 260.335.2(2) previously gave the Department authority to allocate sixty-one percent of revenues from the Fund through grants to underlying entities. Now those funds are directly distributed to districts. This does not mean that the Department cannot place restrictions on other funds that it may provide through grants to districts. By way of example, during oral argument the Department acknowledged that it awards "tire funds" and "battery funds" to districts through grants. However, the Department's general authority under section 260.225.1(8) was limited as to the distributions from the Fund to districts pursuant to section 260.335.2(2) when the legislature amended section 260.335.2(2) in 2015. To the possible extent the Department believes these two sections conflict, the specific mandate for the Department to directly distribute funds to districts under section 260.335.2(2) prevails over the Department's general authority to establish criteria for awarding grants to districts under section 260.225.1(8). *See State ex rel. Hillman v. Beger*, 566 S.W.3d 600, 607 (Mo. banc 2019) ("[T]he doctrine of *in pari materia* recognizes that statutes relating to the same subject matter should be read together, but where one statute deals with the subject in general terms and the other deals in a specific way, [if] they conflict, the specific statute prevails over the general statute."). Accordingly, no absurd or illogical result manifests because these statutes can be harmonized. *See AT&T Wireless Servs.*, 371 S.W.3d at 20. The Department still has the authority to carry out its responsibilities pursuant to section 260.225.1(8), but its oversight authority no longer applies to the sixty-one percent of revenues listed in section 260.335.2(2) which is allocated directly to

12

districts. The Department retains their oversight authority over grants issued by the districts to other entities such as cities and counties as provided in the statute.

The Department further argues that Section 260.225.1(11) also provides it authority to restrict and oversee the funds provided under section 260.335.2(2). Section 260.225.1(11) provides in relevant part, "the department shall: . . . [c]ontract with cities, counties, districts and other persons to act as its agent in carrying out the provisions of sections 260.200 to 260.345 under procedures and conditions as the department shall prescribe." The Department interprets section 260.225.1(11) as creating a contractual relationship between it and the districts. This is incorrect. The Department has the authority to enter into contracts with districts, but a contractual relationship is not automatically created by the enactment of this statute. Thus, no absurd or illogical result manifests from our interpretation of section 260.335.2(2) because it does not contradict or conflict with section 260.225.1(11). *See AT&T Wireless Servs.*, 371 S.W.3d at 20.

The Department correctly asserts that courts do not favor reaching a finding that a statute has been repealed by implication. *State v. Carter*, 614 S.W.3d 74, 79 (Mo. App. W.D. 2020). If, however, "by any fair interpretation both statutes . . . can stand, there is no repeal by implication and both should be given effect." *Id.* Because our interpretation of section 260.335.2 can be harmonized with the other provisions under section 260.225 there is no repeal by implication and both should be given effect. Point I is denied.

**Invalidation of 10 CSR 80-0.050**

The Department's second point on appeal is that the trial court erred in invalidating 10 CSR 80-9.050 because it does not conflict with section 260.335.2(2) since the legislature did not remove the Department's oversight authority over money districts receive from the Fund. As set forth above, we disagree.

The Department has the authority to promulgate necessary rules to carry out the provisions of section 260.200 to 260.345; however, these rules may not conflict with state statutes. Section 260.225.1(3); Section 536.014 ("No department, agency, commission or board rule shall be valid in the event that: (1) There is an absence of statutory authority for the rule or any portion thereof; or (2) The rule is in conflict with state law[.]").

The purpose of 10 CSR 80-9.050 is to provide "procedures and provisions for districts to qualify for grant funds from the [Fund] as provided for in section 260.335.2." Districts are required to enter into a FAA with the Department prior to receiving their allocation of money from the Fund and the Department has the authority to "withhold or reduce district grant awards until the district is in compliance with" the FAA. 10 CSR 80-9.050(2)(C)(2); 10 CSR. 80-9.050(9)(A).

As discussed in Point I, the amendment to section 260.335.2(2) removed the Department's authority to use a FAA as a condition to districts receiving their portion of the Fund under section 260.335.2(2), and thus, the Department must distribute the money directly to the districts. *See Union Elec. Co. v. Dir. of Revenue*, 425 S.W.3d 118, 124-25 (Mo. banc 2014) ("If a regulation is inconsistent with the statute, it is the statute, not the regulation, that this Court will apply."). The Department argues the trial court failed to

14

limit its decision to only effect the amended section 260.335.2(2) has on 10 CSR 80-9.050, and thus, improperly voided the entire regulation without any legal basis. The entire purpose of 10 CSR 80-9.050 is to provide procedures for "districts to qualify for grant funds" as provided for under section 260.335.2 and after the amendment, there are no longer any grants districts are required to apply for under this section. *See Gasconade Cnty. Counseling Servs., Inc. v. Mo. Dep't of Health*, 314 S.W.3d 368, 377 (Mo. App. E.D. 2010) (holding that any portion of 9 CSR 30-2.010 that contradicted the court's interpretation of section 205.981 is a nullity). Therefore, 10 CSR 80-9.050 is invalid in its entirety because it conflicts with section 260.335.2 and exceeds the Department's statutory authority. Point II is denied.

### Attorneys' Fees on Appeal

Additionally, the District filed a motion for attorneys' fees on appeal, which has been taken with the case. The trial court held the District was entitled to attorney fees pursuant to sections 536.050 and 536.087 in the action below. "[T]he entitlement to attorneys' fees on appeal stands upon the same ground as that at the trial court level." *City of Aurora v. Spectra Commc'ns Grp., LLC*, 592 S.W.3d 764, 801 (Mo. banc 2019). Attorney fees may be awarded when a statute specifically authorizes recovery or when a contract provides for attorney fees. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 431 (Mo. banc 2013). Pursuant to section 536.050, as the prevailing party the District is entitled to attorney fees. *See* Section 536.053 (District is considered a "nonstate party"); Section 536.050 ("A nonstate party who prevails . . . shall be awarded reasonable fees and expenses[.]"); *see also Rogers v. Superior Metal, Inc.*, 480 S.W.3d 480, 485 (Mo. App.

15

S.D. 2016) ("When a statute permits an award of attorney's fees, full compensation can involve an award of attorney's fees on appeal."). While we have the authority to award attorney fees on appeal, "the trial court is better equipped to hear evidence and determine the reasonableness of the fee requested." *Gray v. Mo. Dep't of Corrs.*, 635 S.W.3d 99, 108 (Mo. App. W.D. 2021). The District's motion for attorneys' fees on appeal is granted, and the case is remanded to the trial court to award reasonable attorneys' fees on appeal.

### Conclusion

The judgment of the trial court is affirmed. The case is remanded to the trial court for a determination of and an award of reasonable attorneys' fees to the District for this appeal.

_____

Gary D. Witt, Judge

All concur

16